United States District Court
Southern District of Texas
**ENTERED**
August 29, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PI DATA CENTERS PVT LTD, | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. H-22-3947 |
| HEWLETT PACKARD ENTERPRISES COMPANY, | § § § § | |
| Defendant. | § § § | |

**MEMORANDUM AND ORDER**

The plaintiff, Pi Data Centers Pvt. Ltd., is an Indian corporation that "provides cloud computing and data services and infrastructure in both the public and private sector." (Docket Entry No. 1 ¶¶ 2, 5). Pi Data entered into an agreement with a subsidiary of Hewlett Packard Enterprises (HPE) Company to provide cloud computing infrastructure and technology to the State of Andhra Pradesh. (Docket Entry No. 1 ¶ 6). Pi Data alleges that various violations of Hewlett Packard's Partner Code of Conduct and Anti-Corruption Policy occurred, that it reported these violations to Hewlett Packard, but that Hewlett Packard failed to take corrective action. (Docket Entry No. 1 ¶¶ 9–12). Pi Data sued Hewlett Packard for negligence, negligent misrepresentation, and breach of fiduciary duty. (Docket Entry No. 1 ¶ 16).

Hewlett Packard has moved to dismiss. (Docket Entry No. 9). Having reviewed the motion, the response, the reply, the complaint, and the applicable law, the motion is denied in part and granted in part. The motion is denied as to the negligence and breach of fiduciary duty claims. The motion is granted as to the negligent misrepresentation claim. The negligent

misrepresentation claim is dismissed without prejudice and with leave to amend. An amended complaint must be filed no later than October 25, 2023.

The reasons for these rulings are set forth below.

I.  **Legal Standard**

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F.Supp.2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted). Consideration of

documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M. Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). The court may consider these extrinsic materials without converting to a summary judgment motion. *See Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend before dismissing the action with prejudice, unless amendment would be futile. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Amendment is futile if an amended complaint would still fail to state a claim. *See Mandujano v. City of Pharr, Texas*, 786 F. App'x 434, 438 (5th Cir. 2019); *Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 211 n.1 (5th Cir. 2019).

## II. Factual Background

In 2018, Pi Data entered into an agreement with K Computers, which the complaint alleges is a local agent partner that Hewlett Packard used for contracts when Hewlett Packard "could not directly execute the contract." (Docket Entry No. 1 ⁋ 7). The complaint alleges that "K Computers had no actual role in performance of the contract, and is only responsible for collecting payment on behalf of" Hewlett Packard. (Docket Entry No. 1 ⁋ 7). The complaint also alleges that "[p]rior to execution of the agreement, [Hewlett Packard] and [Hewlett Packard] India assessed the computing/storage needs of the Andhra Pradesh Government, and then used its calculations as a basis to set the pricing in the agreement with Pi Data Centers." (Docket Entry No. 1 ⁋ 6). The complaint alleges that K Computers "knew or should have known that its estimates were excessive, inflated and/or inaccurate at the time they were made." (Docket Entry No. 1 ⁋ 6).

Over the course of the project, Pi Data experienced several other issues with Hewlett Packard affiliates. Pi Data alleges that the affiliates:

(a) deliberately provid[ed] false information regarding the AP Government's cloud computing needs and requirements;

(b) [made] false demands and claims for payment through a third party (K Computers), and otherwise taking actions that could not have been taken by HPE or HPE India;

(c) engag[ed] in activities that give the appearance of impropriety;

(d) fail[ed] to maintain accurate books and records;

(e) fail[ed] to invoice properly, and/or overcharging for products and services; and

(f) fail[ed] to act with highest integrity in dealing with public sector offices and agencies.

(Docket Entry No. 1 ¶ 10).

Pi Data was obligated to report these issues to Hewlett Packard under its Partner Code of Conduct, which states:

HPE requires that HPE Partners (1) implement effective business controls that prevent and detect unlawful conduct; (2) comply with contractual provisions that require strict adherence to all applicable anti-corruption laws and other laws that are relevant to their HPE Partner status and their HPE Partner business; (3) grant and cooperate with HPE audit rights to review the Partners' compliance with such laws relevant to their HPE partner status; (4) to the extent they become aware, proactively report to HPE actual or potential violations of this Partner Code of Conduct or applicable laws involving HPE products by their employees and representatives, as well as actual or potential violations of HPE's Standards of Business Conduct, this Partner Code of Conduct, and applicable laws by HPE's employees and representatives; and (5) provide certification of their compliance with these laws and complete all related HPE training and due diligence as and when requested by HPE.

(Docket Entry No. 9-2).

Pi Data reported these issues to Hewlett Packard's Ethics and Compliance Office on April 29, 2022. (Docket Entry No. 1 ¶ 11). The Office responded that it would address the matter. (Docket Entry No. 1 ¶ 11). Pi Data alleges that it did not do so. (Docket Entry No. 1 ¶ 12). Pi Data alleges that Hewlett Packard "partners and affiliates continue to engage in a willful pattern of misconduct as it pertains to Pi Data Centers," and that the misconduct has caused Pi Data to suffer financial and reputational harm. (Docket Entry No. 1 ¶¶ 13, 14).

### III.  Analysis

Pi Data sued Hewlett Packard for negligence, negligent misrepresentation, and breach of fiduciary duty. (Docket Entry No. 1 ¶ 16). In its motion to dismiss, Hewlett Packard argues that these claims require an underlying fiduciary duty owed by Hewlett Packard to Pi Data, and that Pi Data fails to establish any fiduciary duty. (Docket Entry No. 9 at 10–14). Hewlett Packard also argues that Pi Data has not shown the elements of negligence or negligent misrepresentation. (Docket Entry No. 9 at 14–18).

#### A.  Legal Duty

Pi Data argues that a fiduciary relationship and corresponding legal duty arose out of the Hewlett Packard Code of Conduct and its incorporation of the Anti-Corruption Policy. (Docket Entry No. 13 at 13). Hewlett Packard argues that the Code of Conduct does not create a legal duty between Hewlett Packard and a Hewlett Packard Partner when that partner is harmed by another Hewlett Packard Partner. (Docket Entry No. 9 at 12). Hewlett Packard also argues that the Anti-Corruption Policy applies only to Hewlett Packard employees. (Docket Entry No. 9 at 12–13). Finally, Hewlett Packard argues that a legal duty does not exist because the Code of Conduct and Anti-Corruption Policy are merely aspirational. (Docket Entry No. 9 at 13–14).

Hewlett Packard's arguments are not persuasive. Pi Data and K Computers are both Hewlett Packard Partners as defined in the Code of Conduct. (Docket Entry No. 9-1 at 3 ("An HPE Partner is any party selling HPE products, including distributors, OEMs, resellers, agents, and any other party to an HPE partner or channel agreement. An HPE Partner also includes any party providing services directly or indirectly to HPE in support of HPE business, such as system integrators, logistics companies.")). This means that the Code of Conduct applies to both Pi Data and K Computers. (Docket Entry No. 9-1 at 3 ("This Partner Code of Conduct is applicable to HPE Partners, their employees, temporary employees, agents, independent contractors, and subcontractors and other service providers to HPE supporting HPE business with its customers.")).

The Code of Conduct requires Hewlett Packard Partners to engage in certain affirmative conduct, such as certifying their own compliance and reporting any partner that fails to comply. (Docket Entry No. 9-1 at 3). The Code of Conduct states that these requirements are contractual in nature—"A breach of this Partner Code of Conduct will be considered a breach of the Partner's contract with HPE and may lead to the termination of the business relationship with HPE." (Docket Entry No. 9-1 at 3). Implicit in this Code is the assumption that being a Hewlett Packard Partner is valuable because it signals that the entity is not engaging in corrupt practices: Hewlett Packard agrees to protect that value by investigating compliance issues and terminating business relationships with entities that fail to comply. In exchange, each partner is required to engage in certain affirmative conduct to help Hewlett Packard identify compliance issues. These are legal duties, and they run both ways.

Hewlett Packard's arguments do not require a contrary conclusion. Hewlett Packard first argues that the Code of Conduct does not create a legal duty between Hewlett Packard and a Hewlett Packard Partner when that partner is harmed by another Hewlett Packard Partner. (Docket

6

Entry No. 9 at 12). But Pi Data is not suing Hewlett Packard for K Computers' negligence or failure to comply with the Code of Conduct. Pi Data is suing Hewlett Packard for its own negligence in investigating K Computers.

Hewlett Packard next argues that the Anti-Corruption Policy applies only to Hewlett Packard Employees because it uses the word "we" in phrases like "[w]e do not bribe." (Docket Entry No. 9 at 12–13). But, as Pi Data argues, the "Partner Code of Conduct incorporates by reference the Anti-Corruption Policy." (Docket Entry No. 13 at 19).

Finally, Hewlett Packard argues that no legal duty exists because the Code of Conduct and Anti-Corruption Policy are merely aspirational. (Docket Entry No. 9 at 13–14). For this argument, Hewlett Packard relies primarily on *Retail Wholesale & Department Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017). However, that case is distinguishable.

In *Retail Wholesale*, the Ninth Circuit held that a different Hewlett Packard Code of Conduct from the one at issue here was "inherently aspirational" and could not serve as the basis for a material misrepresentation claim. *Id.* at 1276 (quoting reference omitted). The court highlighted the following language as showing the "aspirational nature" of the Code of Conduct:

> We want to be a company known for its ethical leadership . . . . We know actions speak louder than words. We must make decisions and behave in ways that we can be proud of, that reflect our commitment to doing the right thing. . . . Let us commit together, as individuals and as a company, to build trust in everything we do by living our values and conducting business consistent with the high ethical standards within our SBC.

*Id.* The court explained that these statements could not serve as the basis for a material misrepresentation claim because only statements of fact that are "capable of being objectively false" can serve as the basis for such a claim. *Id.*

7

Several aspects of *Retail Wholesale* distinguish it from the present case. First, the "aspirational nature" of the Code of Conduct was only relevant to whether a statement was misleading, not to whether a duty was owed, as Hewlett Packard argues here. Second, the language in the Partner Code of Conduct at issue here is not merely aspirational; it sets specific requirements that must be followed or the partner will be in breach of contract. Third, in this case, the issue is Hewlett Packard's failure to investigate (after saying it would do so); in *Retail Wholesale*, Hewlett Packard did investigate. *Id.* at 1277 n.3.

The court holds that Hewlett Packard did owe a legal duty to Pi Data.

**B.      Remaining Elements**

Hewlett Packard's brief focuses primarily on the underlying duty element but raises additional arguments about the remaining elements of negligence, negligent misrepresentation, and breach of fiduciary duty. First, Hewlett Packard argues that Pi Data fails to plead breach. (Docket Entry No. 9 at 14–16). Second, Hewlett Packard argues that Pi Data fails to plead that it suffered damages. (Docket Entry No. 9 at 16–17). Finally, Hewlett Packard argues that the misrepresentation claim fails because Pi Data does not allege that Hewlett Packard made false statements on which Pi Data justifiably relied. (Docket Entry No. 9 at 17–18).

First, Hewlett Packard's arguments on breach are similar to its arguments on the existence of a legal duty. As explained above, the court holds that Hewlett Packard owed a legal duty to Pi Data. To the extent Hewlett Packard is arguing that it did, in fact, fulfill its duty, that is a merits argument that is not appropriate for resolution on a motion to dismiss. Second, Hewlett Packard's argument about damages concerns damages computation, whether actions taken before Pi Data's report can count for damages purposes. This argument is also inappropriate for resolution at this stage.

Hewlett Packard's final argument is that Pi Data fails to identify the allegedly false statements that serve as the basis for its negligent misrepresentation claim. The court agrees that the allegation is insufficient. That claim is dismissed without prejudice and with leave to amend.

## IV. Conclusion

Hewlett Packard's motion to dismiss, (Docket Entry No. 9), is granted in part and denied in part. The motion is denied as to the negligence and breach of fiduciary duty claims. The motion is granted with respect to the negligent misrepresentation claim. The negligent misrepresentation claim is dismissed without prejudice and with leave to amend. An amended complaint must be filed no later than October 25, 2023.

SIGNED on August 29, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge